540 P.2d 166
**Chester STEED and Vola Steed, husband and wife, Appellants,**
**v.**
**Jose CUEVAS, Appellee.**
**No. 1 CA–CIV 2393.**

Court of Appeals of Arizona,
Division 1,
Department A.
Sept. 16, 1975.

Rolle Jones Benton & Cole, by F. Keith Benton, Yuma, for appellants.

Pain & Julian, by Theodore A. Julian, Phoenix, for appellee.

## OPINION

OGG, Presiding Judge.

This is an automobile negligence case in which the appellants-plaintiffs Chester Steed and Vola Steed, husband and wife, seek to reverse the jury verdict rendered against them and in favor of the appellee-defendant Jose Cuevas. The plaintiffs claim that the trial court erred in the instructions to the jury and by admitting the accident report into evidence.

The accident occurred as plaintiff was starting to make a left turn off U.S. Highway 80 near Yuma, Arizona, when the left

front portion of defendant's vehicle struck the right rear portion of the plaintiffs' vehicle. The testimony as to the cause of the accident is in dispute. The plaintiff testified that she had made the proper signals for a left turn; the defendant testified that prior to the accident he saw no brake lights or signals indicating a left turn.

A witness who was following the two cars prior to the accident testified that the plaintiff suddenly slowed down and that the witness experienced difficulty in avoiding the accident. The witness also testified that he could see the brake lights of plaintiffs' vehicle and that they were on for 100 feet immediately prior to the accident. Portions of his testimony were conflicting and both parties used selected portions of the testimony in argument to bolster their theory of the accident. A fair appraisal of all the evidence leads us to the conclusion that this case presents a classic jury question for the determination of fault under conflicting claims of negligence and contributory negligence. We believe that there was sufficient evidence to justify the verdict of the jury.

Four questions are presented to us in this appeal and we will discuss each in the order presented to us in the briefs.

1. DID THE TRIAL COURT ERR IN REFUSING TO GIVE PLAINTIFFS' REQUESTED INSTRUCTION NUMBER 3?

This instruction reads:

"You are instructed that the driver of an automobile has the right to use the highways of this state provided that in using them he uses reasonable care and caution for the safety of others. It is the operator's duty to keep his motor vehicle always under control so as to avoid a collision with others using the highway, and he has no right to assume the road is clear, but, under all circumstances and at all times must be vigilant and must anticipate and expect the presence of others legally using the highway."

Plaintiff claims that she was entitled to this instruction since it was directed at the key question as to whether the defendant could have avoided the accident if he had been more observant. Plaintiff argues that a similar instruction has been approved in a long line of Arizona cases and that it was error for the trial court to refuse the instruction. See *Young Candy & Tobacco Company v. Montoya*, 91 Ariz. 363, 372 P. 2d 703 (1962); *Layne v. Hartung*, 87 Ariz. 88, 348 P.2d 291 (1960); *Pearson and Dickerson v. Harrington*, 60 Ariz. 354, 137 P.2d 381 (1943); *Brooks v. De La Cruz*, 12 Ariz.App. 591, 473 P.2d 793 (1970). The trial court refused the instruction on the grounds it was covered by the other instructions given in the case. The court with a few modifications gave the stock Maricopa County Jury Instructions (MARJI) on negligence. The pertinent instruction to this argument is MARJI Number 6 which was given by the court and which reads:

"Negligence is lack of ordinary care. It is a failure to exercise that degree of care which a reasonable, prudent, or careful person would have exercised under the same circumstances. Negligence may arise from doing an act which a reasonable, prudent, or careful person would not do under the same circumstances, or from failing to do an act which a reasonable, prudent or careful person would do under the same circumstances."

The court also instructed on those portions of § 28–730, ARS, concerning the statutory duties of the driver of a motor vehicle. The pertinent portion of such instruction reads:

"Section 28–73[730] provides: The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and traffic upon and the condition of the roadway. Should you find that any party to this suit violated any of the above laws, then that party would be negligent as a mat-

ter of law, and you should then consider the issue of whether that negligence was a proximate cause of the plaintiff's injuries."

We find no error in the trial court's refusal to give plaintiffs' requested instruction number 3. The fact that an instruction was given in the case of *Pearson & Dickerson v. Harrington,* supra, and later approved does not mean it is now error to refuse such an instruction. This instruction was formulated before we had any attempt to get stock uniform instructions. The trial court here quite properly refused this instruction as covered in an obvious attempt to shorten and simplify the jury instructions. The trial court's efforts to avoid repetitive instructions is to be commended. *Orlando v. Northcutt,* 103 Ariz. 298, 441 P.2d 58 (1968); *Reah v. Jupin,* 68 Ariz. 335, 206 P.2d 558 (1949).

We believe that the points of law on this issue of negligence were properly covered by the court. The fact that the plaintiffs' proposed instruction gave a more favored slant to plaintiffs' position does not create any grounds for reversible error in this case.

2. DID THE TRIAL COURT INCORRECTLY INSTRUCT THE JURY AS TO THE LAW RELEVANT TO THE ISSUE OF CONTRIBUTORY NEGLIGENCE?

At the trial the plaintiffs requested that paragraph 2–A of MARJI Number 14 be amended to read:

"If you find that the plaintiff was negligent, and that such negligence was the proximate cause of plaintiff's injuries, then your verdict may be but need not be for the defendant."

This proposed instruction was rejected and the jury was instructed:

". . . If you find that plaintiff was negligent and that such negligence was a proximate cause of plaintiff's injuries, then your verdict should be for the defendant. You may, however, decide that the plaintiff should recover damages

from the defendant even if you find the plaintiff was negligent. The decision is one that you, the jury, must decide. If you determine each of these issues in favor of the plaintiff, then you must find for the plaintiff on the issue of liability."

Plaintiffs allege that this contributory negligence instruction as given does not comply with the refinements of the case of *Layton v. Rocha,* 90 Ariz. 369, 368 P.2d 444 (1962) as set out in the cases of *Heimke v. Munoz,* 106 Ariz. 26, 470 P.2d 107 (1970) and *Winchester v. Palko,* 18 Ariz.App. 534, 504 P.2d 65 (1972). We believe that the instruction as given is in compliance with the Arizona law and specifically informs the jury that, even if they find the plaintiff was contributorily negligent, they may still—in their sole discretion—award damages to the plaintiffs. See § 5, Article 18, Arizona Constitution. In the case of *State v. Cress,* 22 Ariz.App. 490, 528 P.2d 876 (1974), this court has recently discussed the problem faced by Arizona trial judges when attempting to properly instruct in the field of contributory negligence. In our opinion there is no error in the contributory negligence instruction as given and no useful purpose would be served with any further in-depth discussion of this question.

3. DID THE TRIAL COURT ERR IN GIVING THE JURY AN INSTRUCTION ON § 28–754(a) and (b) OF THE ARIZONA REVISED STATUTES?

The jury was instructed:

"No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in Section 28–751 or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until the movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided by this Article in the event that

any other traffic may be affected by the movement. A signal or intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided by this article to the driver of any vehicle immediately to the rear when there is opportunity to give the signal."

The portions of the quoted instruction relating to the turning of a vehicle and the required turning signals are contained in § 28–754(a) and (b), ARS. The portion of the instruction relating to stopping or decreasing speed is contained in § 28–754(c), ARS. The plaintiffs made a timely objection to the giving of instructions containing the provisions of § 28–754(a) and (b) on the grounds that the turning of plaintiffs' vehicle or the contemplated turning of the vehicle had nothing to do with the accident and there was no showing that either section of this statute had been violated. The transcript shows that there was some evidence presented that the plaintiff slowed her vehicle as she started to make a left-hand turn and that the plaintiff gave no left-hand turn signal. Although there was conflicting evidence on this matter, the court properly instructed on this phase of the defendant's contributory negligence theory of the case. *Stearman v. Miranda*, 97 Ariz. 55, 396 P.2d 622 (1964); *Young Candy & Tobacco Company*, supra. Plaintiff cites *Stearman* in support of her argument on this issue. In our opinion this case more directly supports the defendant's position. In that case, on conflicting testimony regarding whether a left-hand turn signal was given, the court held it was proper for the trial court to instruct the jury that it is negligence per se for a motorist to fail to properly signal his turn or his sudden decrease in speed.

4. DID THE TRIAL COURT ERR IN ADMITTING THE ACCIDENT REPORT OF THE DEPARTMENT OF PUBLIC SAFETY?

At the trial, plaintiff objected to the admission into evidence of the highway patrolman's accident report. The trial court admitted the report into evidence after deleting the reference to the citations issued to both the plaintiff driver and the defendant. Plaintiffs' most strenuous objection relates to that portion of the report containing the patrolman's opinion regarding the cause of the accident. That portion reads:

"It is this officer's opinion that this accident was the result of negligence on the part of both drivers. Driver No. 1 was proceeding at a reasonable speed and then suddenly decreased her speed and began to turn. Driver No. 2 must also drive a speed and distance to prevent a collision with any of the many dangers which occur suddenly and unexpectedly. It is this officer's opinion that Mr. Cuevas was following vehicle No. 1 at too close a distance to prevent hitting the vehicle in the rear."

The plaintiffs made a timely objection and requested that the opinions and conclusions of the patrolman be deleted from the report. It was plaintiffs' position that the admission of such an accident report, containing the patrolman's opinion as to the cause of the accident, was error since it was based upon hearsay and allowed the patrolman to usurp the function of the jury by fixing fault as to the cause of the accident.

The opinions and conclusions of the patrolman were based upon the statements he took from the drivers and a third party witness as well as his own observations of the scene. At the time of trial he was no longer a member of the highway patrol. He might have been qualified to testify as an accident reconstruction expert at one

time in his career, but the record is clear that no one tried to so qualify him and there is no representation by any party that he was so qualified. At trial he had great difficulty in fixing the point of impact; he said he used to be able to work a speed-distance formula but he had forgotten how to do it. When he was asked about the estimated speed of plaintiffs' automobile he replied that his estimate of 40 miles per hour ". . . kind of comes off the top of your head." On rebuttal, when plaintiffs' attorney attempted to ask a question relative to the position of the vehicles at the time of impact, the defendant's attorney made the following objection: "Just a second. There's no foundation for this man to testify as an accident reconstruction expert . . ."

■ A highway patrolman with proper training can testify as an expert witness where his opinion is based upon an investigation at the scene and not founded upon statements made to him by other persons. *Bullard v. Stonebraker,* 101 Ariz. 584, 422 P.2d 700 (1967); *Gray v. Woods,* 84 Ariz. 87, 324 P.2d 220 (1958). The witness in this case was never qualified as an accident reconstruction expert so the only basis for his conclusions to come before the jury was the admission into evidence of the accident report. It appears the experienced trial judge relied upon the cases of *State v. Stone,* 104 Ariz. 339, 452 P.2d 513 (1969) and *Rodriguez v. Williams,* 107 Ariz. 458, 489 P.2d 268 (1971) as authority for admitting the accident report into evidence. Prior to the *Stone* decision, accident reports were not admissible and normally only specific portions of the report were admitted into evidence, usually to refresh recollection or for impeachment purposes. In *Stone,* the court admitted an accident report into evidence wherein a patrolman stated that the accident was caused by faulty highway markings. The court held the hearsay objection did not apply since the report was properly admitted into

evidence as a "public record" under the authority of Rule 44(a), Rules of Civil Procedure, 16 ARS, and §§ 28–233 and 28–667, subsection c, Arizona Revised Statutes. Although the *Stone* decision is primarily known for clearing the Arizona negligence law of the old governmental tort immunity concepts, this decision has also caused some confusion as to what portion of an accident report should be admitted into evidence when the report contains objectionable material.

The trial judge was placed in a difficult dilemma on this issue. *Stone* could be interpreted to read that all accident reports —no matter what inadmissible evidence might be contained therein—were admissible if they qualified as public records. We do not believe that our Supreme Court intended such a broad interpretation. In the later *Rodriguez* case the Court stated:

"In *State v. Stone,* 104 Ariz. 339, 452 P. 2d 513 (1969), this Court held that accident reports, made pursuant to statutory duty (ARS §§ 28–233 and 28–667, subsec. C) *are admissible for purposes of proving objective data observed and noted by the investigating officer in his report.* The accident report was clearly admissible. The record also reveals that plaintiff's counsel agreed to the report's admission into evidence after several objectional portions were deleted therefrom. Having agreed to its introduction, counsel cannot now be heard to assert error." [Emphasis added]

It would appear that the Court placed some limitation on the admissibility of the contents of an accident report when it interpreted *Stone* and said accident reports are admissible "for purposes of proving objective data observed and noted by the investigating officer in his report." See *Killingsworth v. Nottingham,* 18 Ariz.App. 356, 501 P.2d 1197 (1972); *Spettigue v. Arizona Highway Commission,* 14 Ariz. App. 334, 483 P.2d 566 (1971).

Rule 44(a), Rules of Civil Procedure, 16 ARS, reads:

"44(a) Records of public officials. The records required to be made and kept by a public officer of the state, county, municipality, or any body politic, and copies thereof certified under the hand and seal of the public officer having custody of such records, shall be received in evidence as prima facie evidence of *the facts therein stated.*" [Emphasis added].

It should be noted that the rule limits the admissibility of the contents of public records to "the facts therein stated."

It is our opinion that it was reversible error to allow the entire accident report into evidence for it allowed an unqualified witness to testify as an accident reconstruction expert and give his opinion as to the ultimate cause of the accident. To allow the entire contents of all accident reports into evidence would do violence to the law of evidence. It would allow an unqualified witness to give an expert opinion and it would allow rank hearsay to come into evidence clothed with the respectability of a public record.

Defendant takes the position that, even if we find it error to admit the accident report into evidence, such error was invited and waived by the plaintiffs' attorney when he asked the officer about his opinions and conclusions as to the cause of the accident. The record shows that the plaintiffs' attorney did not ask about these opinions until the report had come into evidence over his valid objection. Once an exhibit goes into evidence and the record has been preserved by a proper objection, the objecting attorney has every right to examine from such document and attempt to rehabilitate his case. *State v. Wilson,* 4 Ariz.App. 420, 420 P.2d 992 (1966).

Reversed and remanded for new trial.

DONOFRIO and FROEB, JJ., concurring.